**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

|  |  |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC., EMPLOYMENT PRACTICES LITIGATION | : Case No. 3:05-MD-527-RM : (MDL 1700) : : Judge Robert L. Miller Jr. : |
| THIS DOCUMENT RELATES TO: | : : |
| Michael Tofaute, et al. v. FedEx Ground Package System, Inc., Civil No. 3:05-cv-00595-RLM-CAN (NJ) | : : : : |

---

**NEW JERSEY CLASS REPRESENTATIVES' OBJECTION TO FINAL APPROVAL**
**OF THE PROPOSED SETTLEMENT OF THE NEW JERSEY ACTION**

---

**DiSABATO & BOUCKENOOGHE LLC**
David J. DiSabato, Esq.
Lisa R. Bouckenooghe, Esq.
4 Hilltop Road
Mendham, New Jersey 07945
Tel.: 973-813-2525
Fax: 973-900-8445
ddisabato@disabatolaw.com
lbouckenooghe@disabatolaw.com

*Attorneys for Objectors /*
*New Jersey Class Representatives*

**NAGEL RICE LLP**
Greg M. Kohn, Esq.
103 Eisenhower Parkway
Roseland, New Jersey 07068
Tel.: 973-618-0400
Fax: 973-618-9194
gkohn@nagelrice.com

*Attorneys for Objectors /*
*New Jersey Class Representatives*
*(pending pro hac vice admission)*

Dated:  November 14, 2016

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ……………………………………………….....1

NEW JERSEY CLASS MEDIATION ………………………………………………...2

ARGUMENT ……………………………………………………………………..……3

       I.     LEGAL STANDARD ……………………………………….…………...3

       II.    THE "RED FLAGS" IN THIS CASE ARE ENOUGH ON THEIR OWN TO PREVENT THIS COURT FROM GRANTING FINAL APPROVAL……………….……………………………………………. 5

       III.   THE NJCFA CLAIMS WERE IMPROPERLY EXCLUDED FROM THE SETTLEMENT……………………………………………………..7

           A.    The NJCFA Claims Were Not Properly Assessed in the Settlement………………………………………………………7

           B.    The Certified NJCFA Claim Is A Viable, Valuable Claim Under New Jersey Law And Must Be Given Tangible Value.......……..10

           C.    The NJCFA Applies To The Transactions At Issue In This Case…………………………………………………...…….14

           D.    The NJCFA's Treble Damages Must Be Considered……………………17

           i.    A Discount For The Likelihood Of Success Has Already Been Factored In……………………………………………………18

           ii.    Trebling Damages Does Not Impermissibly Assume Fault …………….20

   IV.    THE SETTLEMENT DOES NOT REFLECT THE CERTAINTY OF THE ABC TEST IN NEW JERSEY. …………………………………………….…. 20

   V.    THERE IS NO RISK OF FEDERAL PREEMPTION UNDER THE FEDERAL ADMINISTRATION AUTHORIZATION ACT OF 1994…………21

   VI.   DISCOVERY IS REQUIRED TO FULLY ASSESS THE INADEQUACIES OF THE SETTLEMENT…………………………………………………...23

CONCLUSION…………………………………………………………………...25

## TABLE OF AUTHORITIES

### Cases

*Alin v. Am. Honda Motor Co.*,
   2010 WL 1372308 (D.N.J. Mar. 31, 2010) ........................................................... 13

*Allen v. V and A Bros., Inc.*,
   414 N.J. Super. 152 (App. Div. 2010) ................................................................... 7

*Belmont Condominium Ass'n, Inc., v. Geibel*,
   432 N.J. Super. 52 (App. Div. 2013) ..................................................................... 13

*BOC Group, Inc. v. Lummus Crest, Inc.*,
   251 N.J. Super 271 (Law Div. 1990) ..................................................................... 15

*Butler v. American Cable & Telephone, LLC*,
   2011 WL 4729789 (N.D. Ill. Oct. 6, 2011) ........................................................... 4

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................... 11

*Cooper v. Samsung Elec. Am., Inc.*,
   374 Fed. Appx. 250 (3rd Cir. 2010) ...................................................................... 7

*Costal Group, Inc. v. Dryvit Systems, Inc.*,
   274 N.J. Super. 171, 642 A.2d  (App. Div. 1994) ................................................ 14

*Costello v. Beavex, Inc.*,
   810 F.3d 1045 (7th Cir. 2016) ......................................................................... 21, 22

*Cox v. Sears Roebuck & Co.*,
   138 N.J. 2 (1994) ............................................................................................... 7, 13

*Craig v. FedEx Ground Package Sys., Inc.*,
   335 P.3d 66, 104 (Ka. 2014) .................................................................................. 16

*Crawford v. Equifax Payment Servs., Inc.*,
   201 F.3d 877 (7th Cir. 2000) ............................................................................... 5, 6

*Devine v. Advanced Computer Concepts Inc.*,
   2008 WL 5272452 (D.N.J. Dec. 16, 2008) ........................................................... 13

*Dunn v. H.K. Porter Co., Inc.*,
   602 F.2d 1105 (3d Cir. 1979) ................................................................................ 18

*Echavarria v. Williams Sonoma, Inc., et al.*
   2016 WL 1047225 (D.N.J. March 16, 2016) .......................................... 21, 22, 23

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ................................................................................. 5

*Furst v. Einstein Moomjy, Inc.*,
   182 N.J. 1 (2004) ................................................................................................... 13

*Garcia v. General Motors Corp.*,
   910 F.Supp. 160 (D.N.J.1995) .............................................................................. 13

*Gary v. Air Grp., Inc.*,
   397 F.3d 183 (3d Cir. 2005) .................................................................................. 22

*Gennari v. Weichert Co. Realtors*,
   148 N.J. 582 (1997) ............................................................................................. 7, 8

*Girsh v. Jepson*,
   521 F. 2d 153 (3d Cir. 1975) ................................................................................. 11

*Hargrove v. Sleepys, Inc.*,
220 N.J. 289, 106 A.3d 449 (N.J. 2015) ............................................................ 21

*Hundred East Credit Corp. v. Eric Schuster Corp.*,
212 N.J. Super. 350, 515 A.2d 246 (App. Div. 1986) ...................................... 14, 15

*In re Art Materials Antitrust Litig.*,
100 F.R.D. 367 (N.D. Ohio 1983) ....................................................................... 18

*In re Auction Houses Antitrust Litig.*,
2001 WL 170792 (S.D.N.Y. Feb. 22, 2001) .................................................... 18, 19

*In re Baby Products Antitrust Litigation*,
708 F.3d 163 (3d Cir. 2013) ............................................................................... 12

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
216 F.R.D. 197 (D. Me. 2003) ........................................................................ 18, 19

*In re Elec. Carbon Products Antitrust Litig.*,
447 F. Supp. 2d 389 (D.N.J. 2006) ..................................................................... 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ................................................................................. 18

*In re General Motors Corp. Engine Interchange Litigation*,
594 F.2d 1106 (7th Cir. 1979) ..................................................................... passim

*In re LGZenith Repair Projection Television Class Action Litigation*,
2009 WL 455513 (D.N.J. Feb. 18, 2009) ....................................................... 17, 20

*In re N.M. Natural Gas Antitrust Litig.*,
607 F. Supp. 1491 (D. Colo. 1984) ..................................................................... 18

*In re Remeron End-Payor Antitrust Litig.*,
2005 WL 2230314 (D.N.J. Sept. 13, 2005) ......................................................... 11

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002*)* ................................................................... 18, 20

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*,
31 F.3d 1259 (3d Cir. 1994) ......................................................................... passim

*Jefferson Loan Co., Inc. v. Session*,
397 N.J. Super 520 (App. Div. 2008) .................................................................... 7

*Kamilewicz v. Bank of Boston Corp.*,
100 F.3d 1348 (7th Cir. 1996) .............................................................................. 6

*Kavky v. Herbalife Int'l of Am.*,
820 A.2d 677 (N.J. Super. Ct. App. Div. 2003) ........................................... 9, 15, 16

*Kugler v. Koscot Interplanetary, Inc.*,
293 A.2d 682 (N.J. Super. Ct. Ch. Div. 1972) .................................................. 9, 14

*Kugler v. Romain*,
279 A.2d 640 (N.J. 1971) ..................................................................................... 8

*Leff v. First Horizon Home Loan*,
2007 WL 2572362 (D.N.J. Sept. 4, 2007) ........................................................... 14

*Mandujano v. Basic Vegetable Products, Inc.*,
541 F.2d 832 (9th Cir. 1976) ............................................................................... 5

*Marascio v. Campanella*,
298 N.J. Super. 491 (App. Div. 1997) ............................................................. 15, 16

*Mars Steel Corp. v. Cont'l Illinois Nat'l Bank & Trust Co.*,
834 F.2d 677 (7th Cir.1987) ......................................................................... passim

*Mirfasihi v. Fleet Mortgage Corp.,*
    450 F.3d 745 (7th Cir. 2006) ................................................................. passim
*Morales v. Trans World Airlines, Inc.,*
    504 U.S.374 (1992) ................................................................................. 22
*Morgan v. Air Brook Limousine, Inc.,*
    510 A.2d 1197 (N.J. Super. Ct. Law Div. 1986) ................................ 9, 14
*Naporano Iron & Metal Co. v. American Crane Corp.,*
    79 FSupp.2d 494 (D.N.J. 1999) ............................................................ 15
*Pasquale v. Influential Partners, LLC,*
    2016 WL 1690089 (D.N.J. Apr. 26, 2016) ............................................ 13
*Perth Amboy Iron Works, Inc. v. American Home Assurance Co.,*
    543 A.2d 1020 (App. Div. 1988) ........................................................... 14
*Pettway v. American Cast Iron Pipe Co.,*
    576 F.2d 1157 (5th Cir. 1978) ................................................................. 5
*Reynolds v. Beneficial Nat'l Bank,*
    288 F.3d 277 (7th Cir. 2002) ............................................................... 3, 4
*Rowe v. New Hampshire Motor Transp. Ass'n,*
    552 U.S 364 (2008) ................................................................................ 22
*Saint v. BMW of North America, LLC,*
    2015 WL 2448846 (D.N.J. May 21, 2015) ........................................... 20
*Skeer v. EMK Motors, Inc.,*
    187 N.J. Super. 465 (App. Div. 1982) .................................................. 13
*Strawn v. Canuso,*
    657 A.2d 420 (N.J. 1995) ........................................................................ 8
*Sullivan v. DB Investments, Inc.,*
    667 F.3d 273 (3d Cir. 2011) .................................................................. 17
*Synfuel Technologies, Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ............................................................... 3, 5
*Union Ink Co., Inc. v. AT&T Corp.,*
    801 A.2d 361 (N.J. Super. Ct. App. Div. 2002) ..................................... 8
*Varacallo v. Mass. Mut. Life Inc. Co.,*
    226 F.R.D. 207 (D.N.J. 2005) ............................................................... 11

## Statutes

49 U.S.C. §14501(c)(1) .............................................................................. 21
N.J.S.A. 43:21-19(i)(A)-(C) ....................................................................... 21
N.J.S.A. 56:8-1(d) ...................................................................................... 14
N.J.S.A. 56:8-2 ............................................................................................. 8
N.J.S.A. § 56 .............................................................................................. 20
N.J.S.A. § 56:8-1 .......................................................................................... 1
N.J.S.A. §56:8-19 ............................................................................... passim

## Other Authorities

*Manual for Complex Litigation* § 1.46 ..................................................... 24
Restatement (Second) of Agency §202(2) ................................................. 21

## PRELIMINARY STATEMENT

The New Jersey Class is represented by seven Court-approved Class Representatives.[1] All seven New Jersey Class Representatives object to the proposed settlement. The proposed settlement, therefore, is rejected by each and every Class Representative in New Jersey whose duty it is to ensure that the best possible result is obtained for the other unnamed class members. In light of the fact that each of the New Jersey Class Representatives **do not** support the proposed settlement, this Court should not approve the settlement.

The New Jersey Class Representatives object to the settlement for two fundamental reasons. First, the settlement does not provide any value for the claims certified by this Court under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*. (the "NJCFA").  During the February 2016 mediation, Co-Lead Counsel assigned a value of "zero" to the NJCFA claims. As further explained below, the NJCFA claims are viable and have substantial value.  The NJCFA provides for treble damages and a mandatory award of attorneys fees.  Co-Lead Counsel's calculation of $46,700,000 as the maximum achievable damages excludes the value of the NJCFA claims.  If the NJCFA claims are included the true maximum value is $140,000,000. Although, as with any claim, the NJCFA claims are subject to a certain degree of risk, the New Jersey Class is certainly entitled to a value for these claims far greater than the "zero" provided for under the proposed settlement.

Second, putting the NJCFA claims aside, under prevailing New Jersey law, the overall value of the settlement is substantially undersold by the proposed settlement.  According to the papers filed in support of preliminary approval of the New Jersey settlement, Co-Lead Counsel

---

[1] The seven Court-approved Class Representatives are:  Michael Tofaute, Francis Dennis Lynch, Thomas Mikulski, David McMahon, Pat Carrigan, Michael B. Kilmartin, and Frank Cucinotti (collectively the "New Jersey Class Representatives").  Their Declarations Objecting to Final Approval of the Proposed Settlement of the New Jersey Action are annexed to the Declaration of David J. DiSabato, Esq., dated November 14, 2016 ("DiSabato Decl."), submitted herewith.

assessed the proposed settlement at approximately 55% of the maximum achievable damages.  In 2015, however, the New Jersey Supreme Court adopted the conjunctive "ABC" test, which is determinative of the central classification issue relevant to the New Jersey class.  Because of the New Jersey Supreme Court's opinion, the New Jersey Class has an almost 100% chance of success on this issue.  Even accounting for relevant risk factors such as the possibility of Federal preemption, it is clear that the 55% value advanced by Co-Lead Counsel is substantially lower than that which is realistically obtainable by the New Jersey Class.

For these reasons, and in light of the outright rejection of the proposed settlement by all seven of the New Jersey Class Representatives, this Court should not approve the settlement.

## NEW JERSEY CLASS MEDIATION

The New Jersey Class Representatives are class members and each has been actively involved in this case throughout the years of litigation.  Each has been duly certified as Class Representative for the New Jersey Class by this Court (MDL Doc. No.1119).   Each of the New Jersey Class Representatives would receive a $15,000 service payment if the settlement is approved.   None of the New Jersey Class Representatives agreed to the settlement at the mediation.

In late 2015, the New Jersey parties began exploring settlement through mediation. The New Jersey mediation took place on February 1, 2016.  Two of the Class Representatives, Michael Tofaute and David McMahon, attended the mediation in person. *See* Declarations of Michael Tofaute ("Tofaute Decl.") and David McMahon ("McMahon Decl."), annexed as Exhibits A and B, respectively, to the DiSabato Decl.

At mediation, the New Jersey Class Representatives through Mr. Tofaute and Mr. McMahon expressed their disagreement with the terms of the proposed settlement. *See* Toufate

and McMahon Decls. At ¶¶ 5, 7.  Mr. Cucinotti, who was not present at the mediation, was the only class representative who executed the Settlement Agreement weeks later and did so without a full appreciation of the factors that were considered in arriving at a settlement.  *See* Declaration of Frank Cucinotti, ¶¶ 5-8 annexed to the DiSabato Decl. at Exhibit C. Now knowing all the facts, Mr. Cucinotti objects to the settlement and would not have signed the Settlement Agreement had he been fully informed.[2] Id. On June 29, 2016, Co-Lead Counsel submitted an Unopposed Motion for Preliminary Approval of the Settlement.  (MDL Doc. No. 2704).  The Court granted preliminary approval of the proposed New Jersey settlement on August 17, 2016. (MDL Doc. No. 2751).

## ARGUMENT

### I.   LEGAL STANDARD

When presented with a proposed class action settlement, a District Court "must exercise the highest degree of vigilance" to ensure that the settlement is "fair, adequate, and reasonable, and not a product of collusion*." Mirfasihi v. Fleet Mortgage Corp.*, 450 F.3d 745, 748 (7th Cir. 2006).  In this context, the Seventh Circuit has stated that a District Court Judge functions as a fiduciary of the class, subject to the high duty of care the law requires of fiduciaries.  *Id; see also, Synfuel Technologies, Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).

As a general principle, a District Court should evaluate, among other things, the probability of plaintiff prevailing on its various claims, the expected costs of future litigation, and hints of collusion. *See, e.g., Mars Steel Corp. v. Cont'l Illinois Nat'l Bank & Trust Co.,* 834

---

[2] Co-Lead Counsel's Omnibus Motion inaccurately represents that all Class Representatives were satisfied with the settlement.  See MDL Doc. No. 2692, p. 11 ("All of the Named Plaintiffs who so participated indicated approval and satisfaction with the proposed settlement in their cases.").  The Memorandum of Law in Support of Preliminary Approval of the New Jersey Class inaccurately represents that the parties agreed to a settlement in principle at the mediation,  *See* MDL Doc. No. 2704 p. 5.

F.2d 677, 681–82 (7th Cir.1987); *Reynolds,* 288 F.3d at 283–85.   In determining whether to approve a proposed settlement, the court should consider "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed."  *Butler v. American Cable & Telephone, LLC*, 2011 WL 4729789 at *9 (N.D. Ill. Oct. 6, 2011).

Within this framework, the Seventh Circuit has identified two complimentary approaches to value plaintiffs' claims as contrasted against the terms of a proposed settlement.   One approach is to use the "probability of plaintiff prevailing" as the relevant metric.  *See, e.g., Mars Steel Corp.*, 834 F.2d at 682 (citing *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1132 n. 44 (7th Cir. 1979)); *Mirfashi, supra*, 450 F.3d at 749 (7th Cir. 2006 (it is the duty of the District Court to accurately estimate the litigation value of the claims).

It is established law in this Circuit that a district court may not approve a class settlement without first conducting an analysis to determine the value of the Class members' claims, and whether the settlement is reasonable in light of that value. *See Reynolds*, 288 F.3d at 284-85 (courts must "quantify the net expected value of continued litigation [of the federal claims] to the class ... a settlement for less than that value would not be adequate.").

The second approach endorsed by the Seventh Circuit involves the identification and analysis of "warning signals" and "suspicious circumstances" within or surrounding the settlement.  *Reynolds*, 288 F.3d at 284.  This approach serves as the catch-all for the "many imponderables [that] enter in the evaluation of a settlement."  *Mars Steel*, 834 F.2d at 682.

The two approaches are complimentary and represent general rules regarding the consideration of the adequacy of a proposed settlement. First, although not all warning signs are germane, and some can in fact be overlooked, certain "red flags" are dispositive on their own, and their presence can mandate the Court's refusal to grant approval. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877 (7th Cir. 2000). Second, the "most important factor relevant to the fairness of a class action settlement . . . is the . . . strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel*, 463 F.3d at 653 (citing *In re GMC Engine Interchange Litig.*, 594 F.2d at 1132).

The proposed settlement in this case fails on both fronts. The proposed settlement does not reflect the net expected value of the case and it is rife with numerous warning signs of conflicts and collusion that the Court needs to adequately consider.

## II.    THE "RED FLAGS" IN THIS CASE ARE ENOUGH ON THEIR OWN TO PREVENT THIS COURT FROM GRANTING FINAL APPROVAL.

Research has revealed *no* proposed class action settlement that has been approved over the objections of *every* named-plaintiff to the action. If one or more class representatives oppose the proposed settlement, all aspects of the settlement will receive intense scrutiny. *See Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) (reversing settlement of consumer claims where, among other identified problems, four of five named plaintiffs objected to the settlement and the remaining plaintiff was related to class counsel); *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832 (9th Cir. 1976)(fact that five of nine named plaintiffs opposed the settlement given great significance in holding that settlement approval constituted an abuse of discretion); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214-19 (5th Cir. 1978) (acknowledging general rule but holding settlement unfair where approximately 70% of class and all named plaintiffs objected). The New Jersey Class Representatives were appointed by this Court to speak for the

other 968 members of the New Jersey Class.  Their voice and their opinion should be afforded great – if not dispositive – weight by this Court.

A reasonable settlement can overlook *some* warning signs. *Mirfasihi II*, 450 F.3d at 749 ("[T]hese wrinkles, standing alone, are not enough for us to find that the district court abused its discretion in approving the settlement."). But certain warning signs on their own, or in total, can and should force the district court to reject what appears to be an otherwise reasonable settlement. *See Crawford*, 201 F.3d at 882.  The settlement here contained numerous warning signs, some equal to those identified in the list above, and some new ones that were equally serious.  Here, the warning signs are: (1) the New Jersey Class Representatives did not agree to the settlement of the New Jersey Class, meaning that Co-Lead Counsel did not have authority to settle; (2) Co-Lead Counsel failing to consider and give adequate weight to the availability of statutory damages; (3) New Jersey Counsel and Co-Lead Counsel failed to address the New Jersey Class Representatives desire to turn down the settlement; (4) Attorneys' fees coming out of the settlement amount instead of in addition to the settlement considering the NJCFA claims and potential for an attorneys' fee award; and (5) the court certified the NJCFA claim and the proposed settlement has no value for that claim and releases it.

Individually, and cumulatively, these warning signs conclusively suggest this is a settlement where "[t]he lawyers support the settlement to get fees; the defendants support it to evade liability; [and] the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information." *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996) (Easterbrook, J., joined by Posner, *29 C.J., and Manion, Rovner, and Diane P. Wood, JJ., dissenting from denial of rehearing en banc).

6

III.   **THE NJCFA CLAIMS WERE IMPROPERLY EXCLUDED FROM THE SETTLEMENT.**

A.   **The NJCFA Claims Were Not Properly Assessed in the Settlement.**

New Jersey's Consumer Fraud Act has long been regarded as one of the strongest consumer protection statutes in the Country. *Cooper v. Samsung Elec. Am., Inc.*, 374 Fed. Appx. 250, 256 (3rd Cir. 2010); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994). It provides mandatory treble damages and mandatory attorneys' fees for prevailing plaintiffs. *See* N.J.S.A. §56:8-19. The NJCFA's jurisprudence has been well developed both by New Jersey State and Federal courts, all of which have upheld the NJCFA's guiding principle that this remedial statute must be liberally construed in favor of consumers. *Allen v. V and A Bros., Inc.*, 414 N.J. Super. 152, 156 (App. Div. 2010). Consistent with this approach, the NJCFA's history has been one of "constant expansion and consumer protection." *See, e.g., Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super 520, 533-34 (App. Div. 2008); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604 (1997).

Despite this, Co-Lead Counsel has determined that the NJCFA claims should be given no weight and no value in determining the settlement amount. This is unreasonable and warrants denial of approval. In *Mirfasihi,* the Seventh Circuit reversed the District Court's approval of a class settlement because the analysis did not consider, at a minimum, the pertinent consumer protection statutes. 450 F.3d at 749.

In *Mirfasihi*, plaintiffs asserted claims under the Massachusetts Consumer Protection Law ("MACPL"). Prior to class certification, the case settled. Numerous class members objected to the settlement. Over the objections, the District Court approved the settlement. The objectors appealed and the approval was reversed. On remand, the District Court again approved the settlement. The objectors appealed again. The objectors argued that the District Court

should not have accepted a value of zero to the MACPL claims when the plaintiffs had prevailed in two motions to dismiss the MACPL claims.   The Seventh Circuit found that valuing the MACPL claims at zero was improper.   The Seventh Circuit also found that the District Court failed to take into account that, while there may be obstacles to recovery on those claims, the claims were viable at the time and had a tangible value.

Here, The New Jersey Class Representatives objection is similar to that in *Mirfasihi*. However, the facts here are even stronger for the Objectors.   Co-Lead Counsel has assigned a value of zero to the NJCFA claims, essentially arguing that there is no likelihood of success.   *See* Joint Declaration of Co-Lead Counsel in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement for New Jersey (MDL Doc. No. 2705 at 16).   It is simply wrong to assign the NJCFA claims a value of zero when Defendants have never challenged the NJCFA claims on a motion to dismiss or on summary judgment and this Court certified the NJCFA claims.

Even Co-Lead Counsel's own words belie the accuracy of a zero value. In arguing for class certification, Co-Lead Counsel stated:

> The NJCFA creates a cause of action for "unconscionable commercial practice[s] . . . in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. 56:8-2. The NJCFA protects against unconscionable practices both in the initial sale, and in "the subsequent performance" of the resulting contract. Id. NJCFA may be violated even where the claimant has not been misled or deceived, and neither reliance nor intent to defraud need be shown to establish a claim based upon misrepresentation, although inaccurate statements must be material, and must be linked to some "ascertainable loss" by the claimant. *Strawn*, 657 A.2d at 429; *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997); *Kugler v. Romain*, 279 A.2d 640, 652 (N.J. 1971); *Union Ink Co., Inc. v. AT&T Corp.*, 801 A.2d 361 (N.J. Super. Ct. App. Div. 2002). NJCFA protects consumers from deception, even when committed in good faith. *Gennari*, 691 A.2d at 365.

New Jersey's Appellate Division has applied this statute to allow NJCFA protections to the purchasers of business opportunities, such as the Plaintiffs here, where that business opportunity is made available to the general public, and is not subject to the protections of the New Jersey Franchise Practices Act. *Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 679-80 (N.J. Super. Ct. App. Div. 2003) (rejecting *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1270-74 (3d Cir. 1994)). See also *Morgan v. Air Brook Limousine, Inc.*, 510 A.2d 1197 (N.J. Super. Ct. Law Div. 1986) (NJCFA claim by a driver who entered into an agreement to lease a vehicle from the defendant and then use that vehicle to service customers); *Kugler v. Koscot Interplanetary, Inc.*, 293 A.2d 682 (N.J. Super. Ct. Ch. Div. 1972) (NJCFA claim by attorney general on behalf of New Jersey purchasers of cosmetics distribution businesses).

Here, Plaintiffs allege that FXG commonly recruited P&D drivers by offering an independent business opportunity targeted to those with an "entrepreneurial spirit." OFM §II.B.1. In reality, Plaintiffs were subject to such extensive control as to render them nothing less than employees. OFM §§ II.B, IV, V. As a result, there is sufficient commonality within the Plaintiffs' NJCFA claim.

MDL Doc. No. 552-2 at 9-11.

There is nothing in the record before this Court that contradicts the prior position taken by Co-Lead Counsel, yet Co-Lead Counsel gave the NJCFA claims zero value in determining the value of the settlement.[3]

Moreover, in counsel's certification in support of the motion for preliminary approval, counsel stated that "Plaintiffs' expert excluded from this analysis damages and statutory

---

[3] The **only** explanation given by Co-Lead Counsel in the motion seeking preliminary approval was that *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1270-74 (3d Cir. 1994) somehow cast doubt on the success of the NJCFA claims, despite Defendants never raising *J & R Ice Cream Corp.* in any of its submissions.[3] In fact, Defendants have never contested the NJCFA claims at all. Defendants did not file a motion to dismiss the NJCFA claims, did not move for summary judgment on the NJCFA claims when they filed their motion, and did not oppose the merits of the NJCFA claims in response to the New Jersey Class Representatives motion to certify the class. Co-Lead Counsel's explanation for excluding the NJCFA claims rings hollow where, in the Motion for Class Certification, they quickly dismissed this case by citing a New Jersey Appellate Division case rejecting *J & R Ice Cream Corp.* and finding that the NJCFA protects purchasers of business opportunities, such as the New Jersey Class Representatives here, where that business opportunity is made available to the general public, and is not subject to the protections of the New Jersey Franchise Practices Act. *See Kavky v. Herbalife Int'l of Am.*, 820 A.2d 677, 679-80 (N.J. Super. Ct. App. Div. 2003). As for FXG, their only opposition to class certification of the NJCFA claims was on the basis that the NJCFA class should not be certified for lack of "predominance." *See* MDL Doc. No. 624 at 30. Significantly, Defendants did not contest the applicability of the NJCFA or its merits.

penalties for alleged violations of New Jersey's Consumer Fraud Act." *See* MDL Docket. No. 2705 at 9.  Co-Lead Counsel's explanation is that "[t]he damages of this [NJCFA] claim overlap with the other certified claims." (MDL Doc. No. 2704, at 10, n. 4). There is no justification for the unilateral decision to exclude these damages in the mediation calculations, especially when, as set forth below, those same damages were included in the motion for approval of the settlement for the North Carolina Class.  Co-Lead Counsel purposely excluded these damages for no apparent reason.

Finally, and perhaps most telling of all is Co-Lead Counsel's inclusion of these exact type of damages in the North Carolina settlement.  In its brief in support of preliminary approval for the North Carolina Class, Co-Lead Counsel relied on both treble damages and attorneys' fees as a basis for the settlement.  (*See* MDL Doc. No. 2689 at 16-17).  Co-Lead Counsel did so even though in their words it was a "novel" theory.  The settlement in North Carolina was 65% of maximum achievable damages and, according to Co-Lead Counsel, 22% of the claim assuming treble damages.  **That same analysis applied here would result in a settlement of at least $30,376,450 an increase of almost $5 million**.  Moreover, as set forth below, FXG's actions clearly fall under the NJCFA and the New Jersey Class Representatives claims are far from "novel."  The settlement of the New Jersey class cannot be considered reasonable unless a value is given to the NJCFA claims.

> **B.**    **The Certified NJCFA Claim Is A Viable, Valuable Claim Under New Jersey Law And Must Be Given Tangible Value.**

A settlement is fair to the plaintiffs in a substantive sense if it gives them the expected value of their claim if it went to trial, net of the costs of trial. *In re General Motors Corp. Engine Interchange Litigation, supra,* 594 F.2d at 1132 n. 44; *Mars Steel Corp.*, 834 F.2d at 682.  The proposed settlement improperly values the NJCFA claim at zero.  The threat of treble damages

and attorneys' fees in an already certified claim is significant and carries significant value in negotiating a settlement. Co-Lead Counsel asserts that actual damages under the NJCFA overlap with damages under the WPL, thereby establishing NJCFA actual damages of approximately $46,733,000. (See MDL Doc. No. 2704, at 10, n. 4). The New Jersey Class Representatives have been unable to obtain the settlement documents used by Co-Lead Counsel at the mediation to assess the settlement value. Without this information, it is difficult to determine how much money would be added to the settlement given an increased percentage allocation to the NJCFA claims.[4] Also, given Co-Lead Counsel's application for a 30% fee award in this case, the attorneys' fees provision of the NJCFA would result in an increase of 30% in the value of the claim.

The most common test for determining the adequacy of a proposed class action settlement is the *Grinnell* test. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2[d] Cir. 1974). While no one factor is dispositive, the *Grinnell* court itself opined that "[t]he most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id. See also Girsh v. Jepson*, 521 F. 2d 153, 157 (3d Cir. 1975) (adopting the same or similar factors); *Varacallo v. Mass. Mut. Life Inc. Co.*, 226 F.R.D. 207, 239 (D.N.J. 2005) (in order to assess the reasonableness of settlement, the present value of damages plaintiffs would likely recover, appropriately discounted for the risk of not prevailing, should be compared with the amount of the settlement).

The failure to consider the trebling of damages is counter to the letter and spirit of the *Grinnell* factors. The Court must look at the maximum possible recovery assuming that the class prevails at trial. *See In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *23 (D.N.J. Sept. 13, 2005). The maximum recovery that the class can achieve in a NJCFA class

---

[4] As set forth in Section VI, *supra*, access to this material is needed.

action is not single damages; it is <u>automatically</u> treble damages.  *See* N.J.S.A. § 56:8-19; *see also In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) (in vacating the District Court's settlement approval, the Third Circuit noted that the settlement of $5 was grossly insufficient to motivate class members to submit claims when compared against the potential award of actual damages, trebled, but for the lack of proofs).

The proposed settlement is fatally flawed in that it does not consider the enormous effect of the NJCFA's trebling factor and attorneys' fees in establishing a baseline damage figure.[5] Even if the damages sought under the New Jersey Class's other certified claims were identical to the relief sought under the NJCFA claim, the latter's would be trebled, thereby eclipsing the former's by an additional 200%.   To discount the NJCFA damages as "overlapping" shortchanges the New Jersey Class.   Accepting, *arguendo*, Co-Lead Counsel's value of $46,733,000 as "the maximum amount of achievable damages the class could recover" (MDL Doc. No. 2704 at 9), and further accepting that actual damages before trebling under the NJCFA claim are overlapping of that value, but were not considered (*Id.* at p. 10, n.4) – and therefore not trebled – the actual maximum amount of achievable damages available to the New Jersey Class is $140,199,000.[6]  This alone requires that the proposed settlement be rejected as neither fair nor reasonable.

---

[5] The NJCFA also requires a mandatory award of attorney's fees to the prevailing party.  N.J.S.A. § 56:8–19. Having failed to attribute any potential recovery to the NJCFA, the settlement also fails to consider the inclusion of statutory attorneys' fees as a component.   If the case was litigated through judgment, mandatory fees under the NJCFA would significantly contribute to the overall recovery of the class.  Here, based upon a maximum recovery of $46,733,000, attorneys' fees could be as high as $14,019,900.  As such, they cannot be ignored in considering the overall value of the New Jersey Class settlement.

[6] Although $140,199,000 represents the maximum achievable damages, it is certainly subject to the same risk factors applied by Co-Lead Counsel to the proposed settlement figure. However, even accepting Lead Counsel's 45% risk factor, the proper value of the settlement to which the New Jersey Class would be entitled is $77,109,450, which is almost $52,000,000 more than that currently provided by the proposed settlement.

Unlike the "novel" theory in the North Carolina Class, which was given considerable value, the law is clear in New Jersey – a prevailing party under the NJCFA must be awarded mandatory treble damages, reasonable attorneys' fees and costs:

> In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

N.J.S.A. § 56:8–19.

These remedies are mandatory. *Garcia v. General Motors Corp.,* 910 F.Supp. 160, 166 (D.N.J.1995); *see also Skeer v. EMK Motors, Inc.*, 187 N.J. Super. 465, 470 (App. Div. 1982)*,* (noting that when the legislature uses the word "shall" a presumption arises that application is mandatory); *Pasquale v. Influential Partners, LLC*, 2016 WL 1690089, at *2 (D.N.J. Apr. 26, 2016) (where plaintiff demonstrates an unlawful practice and an ascertainable loss, an award of treble damages and attorneys' fees are mandatory); *Alin v. Am. Honda Motor Co*., 2010 WL 1372308, at *7 (D.N.J. Mar. 31, 2010) (remedy of treble damages, reasonable attorneys' fees and costs is mandatory under the NJCFA); *Devine v. Advanced Computer Concepts Inc.,* 2008 WL 5272452, at *3 (D.N.J. Dec. 16, 2008) (an award of treble damages and attorneys' fees is mandatory under the NJCFA, (citing *Cox v. Sears, Roebuck & Co.,* 138 N.J. 2 (1994)).

Furthermore, in New Jersey, the assessment of treble damages and attorneys' fees is mandatory when a violation of the NJCFA exists, even if that results in a windfall to the plaintiff. *Belmont Condominium Ass'n, Inc.*, *v. Geibel, 432 N.J. Super.* 52, 101 (App. Div. 2013). This is because the provisions of the NJCFA mandating the recovery of treble damages are deliberately punitive. *See Furst v. Einstein Moomjy, Inc.,* 182 N.J. 1, 12 (2004) ("The purpose of [the NJCFA] remedies is not only to make whole the victim's loss, but also to punish the wrongdoer

and to deter others from engaging in similar fraudulent practices.").  The treble damages award provides a substantial punitive component which is intended to compensate beyond the amount of actual harm.  *Leff v. First Horizon Home Loan*, 2007 WL 2572362, at *3 (D.N.J. Sept. 4, 2007).  Thus, where there is a violation of the NJCFA, the court is required to award plaintiff treble damages.

### C.    The NJCFA Applies To The Transactions At Issue In This Case.

The NJCFA's definition of "consumer" includes both individuals and businesses.  *See, e.g.*, N.J.S.A. 56:8-1(d).   New Jersey courts have never excluded business-to-business transactions from the protections of the NJCFA, and in fact, has a long history of allowing corporate plaintiffs to maintain NJCFA claims for merchandise used in business operations. *See, e.g., Costal Group, Inc. v. Dryvit Systems, Inc.*, 274 N.J. Super. 171, 179-80, 642 A.2d 649 (App. Div. 1994) (denying summary judgment for NJCFA claim brought by condominium developer against seller of prefabricated wall panels); *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.*, 226 N.J. Super. 200, 209, 543 A.2d 1020 (App. Div. 1988), *aff'd,* 118 N.J. 249, (1990) (corporate plaintiff's claims relating to purchase of a yacht covered by the NJCFA); *Hundred East Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 366-58, 515 A.2d 246 (App. Div. 1986) (NJCFA covered claims by business related to purchase of computer peripherals).

Well before the Third Circuit's decision in *J & R Ice Cream*, New Jersey State Courts faithfully applied the NJCFA to the "sale" of sham a "business" or to contractor / distributor relationships.  *See, e.g., Kugler v. Koscot Interplanetary, Inc.*, 120 N.J. Super. 216, 251-57 (Ch. Div. 1972) (addressing sale of sham distributorship agreements); *Morgan v. Air Brook Limousine, Inc.*, 211 N.J. Super 84, 90-100 (Law Div. 1986) (NJCFA claim brought by a driver

who entered into an agreement to lease a vehicle and then used that vehicle to service defendant's customers).   In these instances, as later confirmed by the New Jersey Appellate Division in *Kavky v. Herbalife International*, 359 N.J. Super. 497, 498-99 (App. Div. 2003), the determinative factor is whether the "opportunity" is marketed to the general public.

The case of *BOC Group, Inc. v. Lummus Crest, Inc.*, 251 N.J. Super 271 (Law Div. 1990), cited with approval in *Kavky,* 359 N.J.Super. 503-506, is also illuminating of the border between those business opportunities that are and are not covered by the NJCFA. In *BOC,* the Court found that technology and engineering support services, involving multi-million dollar international corporations, were not "merchandise" within the purview of the NJCFA because they were not "available to the public at large and sold in large quantities" or "mass produced." *Id.* at 279.  The Court in *BOC*, therefore, highlights the touchstone of the NJCFA inquiry:  where a franchise or dealership opportunity is privately offered or solicited, the transaction *is not* subject to the protections of the NJCFA; conversely, where the opportunity is marketed to the general public and is not a one-off offer, the transaction *is* subject to the NJCFA.  *Id.; see also Naporano Iron & Metal Co. v. American Crane Corp.*, 79 FSupp.2d 494 (D.N.J. 1999).

Even accepting, *arguendo*, that the New Jersey Class entered into their transactions for business purposes, the NJCFA will still be found to apply.  *See, e.g., Hundred East Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 355-57 (App. Div. 1986), *certif. denied*, 107 N.J. 60 (1986) (holding that the NJCFA can apply to the sale of merchandise for use in business operations); *Marascio v. Campanella*, 298 N.J. Super. 491, 498-99 (App. Div. 1997) (applying NJCFA to purchases made for non-consumer, investment purposes).

Defendants and Co-Lead Counsel's reliance on *J & R Ice Cream* is misplaced. The New Jersey Appellate Division's analysis and rejection of the reasoning of *J & R* in *Kavky* is particularly compelling here:

> The federal court concluded . . . that the [NJCFA] is inapplicable to any distributorship or franchise relationship . . . Notwithstanding our high regard for the Third Circuit, **we are unable to agree with its unduly restrictive interpretation of the [NJCFA]**. However, that is not to say that we disagree with the result reached in J & R, but that is only because it appears to have involved a substantial and complex commercial transaction, which likely fell within the Franchise Practices Act. **We cannot endorse J & R's reasoning because that course would deprive citizens of New Jersey of protection under the [NJCFA] in pyramid sales schemes, and similar mass public frauds** . . .

*Id.* (internal citations omitted)(emphasis added). The Appellate Division then explained that the key was whether the opportunity was marketed to the general public. *Id.* at 503, 505; *see also, Marascio v. Campanella*, 689 A.2d. 852 (N.J. Super Ct. App. Div. 1997) (noting that the NJCFA applies to "goods or services generally sold to the public at large."). *Kavky* accurately confirms decades of New Jersey precedent under the NJCFA. The NJCFA has since its enactment served the broad purpose of protecting members of the general public from sharp business practices.

Here, Defendants market the opportunity to become an "independent contractor" to members of the public under what has been held to be a sophisticated nationwide ruse to avoid basic worker protection laws. *See Craig v. FedEx Ground Package Sys., Inc.*, 335 P.3d 66, 104 (Ka. 2014). New Jersey has already held that the Defendants' relationship with the public to whom it markets is so one-sided as to render certain of its elements as procedurally and substantively unconscionable. *See Lucey v. FedEx Ground Package Sys., Inc.*, 305 App'x 875, 878 (3rd Cir. 2009). This relationship resides at the opposite end of the spectrum from that discussed in *J & R Ice Cream* where extensive bargaining between sophisticated corporate

16

entities took place and in which specific, non-public marketing was used. *J & R Ice Cream* is also distinguishable because it concerned the sale of a franchise covered by New Jersey's Franchise Practices Act, which is not the case here. Other facts not present here are: the business entity at issue was formed prior to even learning of the existence of the defendant's smoothie franchises, meaning that the plaintiff existed as a tangible corporate entity prior to any interaction with the defendant and the marketing at issue in *J & R Ice Cream* was not broadcast to the general public. *Id.* at 1262-63. None of these things occurred in this case. The New Jersey Class purchased the right to perform work, after seeing it marketed to the public, on the basis of a take-it-or-leave-it contract, prepared by a highly sophisticated party with far superior bargaining power. These are the factors to which the NJCFA applies.]

**D.    The NJCFA's Treble Damages Must Be Considered.**

Where the Court is tasked with determining the maximum possible recovery for the class to evaluate the reasonableness of settlement, the Court must consider the mandatory treble damages available under the NJCFA. *See In re LGZenith Repair Projection Television Class Action Litigation*, 2009 WL 455513 (D.N.J. Feb. 18, 2009) (in evaluating a proposed class settlement under the NJCFA, "the best possible recovery for the class, in light of the record and the Amended Complaint, would be treble compensatory damages and punitive damages.").

Although there is case law that declines to treble damages when evaluating proposed settlements in class action litigation, the "single damages" approach to evaluating class action settlements is not absolute, has been specifically rejected by some Courts, and ultimately fails as an appropriate yardstick by which to evaluate a class action settlement. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011) (recognizing split of authority on whether evaluation of class settlement should be measured by single damages or treble damages and

determining it is a matter of discretion left to the Court).[7]   The reasons for evaluating a settlement by "single" damages, as opposed to "treble" damages, simply are not present here.

In addition, some courts do not consider trebling damages when evaluating proposed settlements in class actions because they analogize trebling damages to punitive damages, which are not considered. *In re N.M. Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1506 (D. Colo. 1984).   The primary argument for ignoring punitive damages is that they are speculative and inherently uncertain, both with respect to their likelihood and their amount.   While arguments for disregarding punitive damages may be persuasive, treble damages under the NJCFA are different from punitive damages for one primary reason: there is no uncertainty about trebling under the NJCFA.   It is automatic and easy to calculate.

> ### i.   A Discount For The Likelihood Of Success Has Already Been Factored In.

When determining whether a proposed settlement is reasonable, courts must consider the probability that the class would succeed at trial.   However, a probability analysis is used to discount the amount of the "maximum" possible recovery.   *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir. 1995) ("[I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.").   The expected value of a NJCFA claim, then is simple: it is the expected actual damages, discounted for the probability of establishing liability, times three.

---

[7] Although not applicable here, the refusal to consider the trebling of damages in evaluating class action settlements, though not a uniform practice, is generally limited to antitrust class actions.   *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 257-58 (D. Del. 2002*); Fisher Bros. v. Phelps Dodge Indus.*, 604 F. Supp. 446l, 451 (E.D. Pa. 1985); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 371-72 (N.D. Ohio 1983).   *But see In re Auction Houses Antitrust Litig.*, 2001 WL 170792, at *7 (S.D.N.Y. Feb. 22, 2001), aff'd, 42 Fed. Appx. 511 (2d Cir. 2002); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 210 n.30 (D. Me. 2003) (questioning the wisdom of ignoring treble damages but ultimately following that approach); *Dunn v. H.K. Porter Co., Inc.*, 602 F.2d 1105, n.9 (3d Cir. 1979) (a successful plaintiff may recover treble damages under antitrust laws, therefore, a settlement fund created under those laws will reflect substantially more than actual damages).

However, it is important to recognize that the probability of liability is <u>completely independent</u> of the fact of trebling.  *See also In re Auction Houses Antitrust Litig.*, 2001 WL 170792, at *7 (S.D.N.Y. Feb. 22, 2001) ("there are few perceptible justifications of the single damages standard for the determination of the fairness of antitrust class actions," which "placed the settlement court, as fiduciary for the absent class members, in a position in which it may be forced to approve a settlement that no non-representative plaintiffs would accept"); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 210 n. 30 (D.Me. 2003) ("[I]f a [antitrust class] settlement reflects a potential damage recovery, it should logically reflect the other parts of that recovery (trebling and attorneys' fees) that the statute awards automatically."); *see In re Elec. Carbon Products Antitrust Litig.*,  447 F. Supp. 2d 389 (D.N.J. 2006) (evaluating a proposed antitrust class settlement by considering the maximum potential recovery under both a treble-damages standard and a single-damages standard measured against the risks of establishing liability).  Courts have misused the concept of uncertainty to discount the trebling of damages when, in fact, there is nothing "uncertain" about them.

Here, the only number that is certain in this equation is the final one – the damage award will be trebled.  *See* N.J.S.A. § 56:8-19.  The likelihood of success and calculation of damages might be speculative, but the speculative nature of these factors have already been addressed by discounting them.  While the estimated amount of damages itself might represent an estimation, the <u>trebling</u> of that amount is not.   The New Jersey Class has actual damages of approximately $46 million.  Co-Lead Counsel has already discounted that amount by 45% for various risks of litigation going forward.  The component that has been conspicuously left out of Co-Lead Counsel's equation is the trebling factor.  It is improper to discount (or not count) treble damages due to the "uncertainty of litigation" *again*.  The uncertainty factor was already accounted for.

To disregard trebling because of uncertainty results in a double-discounting that impermissibly reduces the class recovery.[8]

### ii.      Trebling Damages Does Not Impermissibly Assume Fault

Co-Lead Counsel may argue that "settlement discussions should not begin with a figure that includes a penalty, as settlement represents an attempt to resolve litigation without determining fault." *Id*.  That argument does not apply here.  It is clear that Co-Lead Counsel has negotiated settlements in this case on the basis of treble damages and attorneys' fees as set forth in the motion in support of the North Carolina Class.

Further, if a settlement reflected a defendant's admission of fault, it would do so by declining to discount the probability of liability.  The point is simple: the issue of admission of fault goes to the probability of liability, not the trebling of damages. All settlements are based on a probability of liability, not an admission of guilt.  To take automatic trebling of the likely damage award into consideration does not change this.

### IV.     THE SETTLEMENT DOES NOT REFLECT THE CERTAINTY OF THE ABC TEST IN NEW JERSEY.

In the last several years, virtually every court to address the threshold issue here, has held that FedEx drivers like the New Jersey Class are employees – not independent contractors.  In New Jersey, as elsewhere, the classification determination is essentially guaranteed to fall in

---

[8] There is some authority for the proposition that treble damages should not be considered in evaluating a class settlement where those damages are "speculative."  *See In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. at 257-58 (potential for treble damages should not be considered because it is purely speculative).  The argument that trebling should be ignored with respect to statutes that mandate treble damage awards reveals either confusion about such statutes or an overwhelming desire to approve settlements.  For example, in *Saint v. BMW of North America, LLC*, 2015 WL 2448846 (D.N.J. May 21, 2015), the Court declined to consider the "mere possibility of punitive or multiple damages" as a yardstick by which to measure the class settlement.  *Id*. at *9.  While this point is well taken with respect to statues where treble damages are permissive, rather than mandatory, that is not the case under the NJCFA.  Accordingly, the analysis in *In re Warfarin Sodium* as well as *Saint* are distinguishable, if not flawed, in that the Courts considered punitive or multiple damages to be only "mere possibilities," and therefore inappropriate to consider in evaluating the "maximum possible recovery." As we have set forth in Section III.B., treble damages are not speculative under the NJCFA.  *See* N.J.S.A. § 56: 8-19.  They are automatic and mandatory and therefore should be considered in evaluating a class settlement.  *See In re LGZenith Repair Projection Television Class Action Litigation*, 2009 WL 455513 (D.N.J. Feb. 18, 2009).

favor of the New Jersey Class.  The recent New Jersey Supreme Court decision in *Hargrove v. Sleepys, Inc.*, 220 N.J. 289, 106 A.3d 449 (N.J. 2015) removed all doubt from this critical issue, when the Court confirmed that the conjunctive "ABC" test governs New Jersey's workers.

In *Hargrove*, the New Jersey Supreme Court considered which test to apply to determine employment status under the WPL.  The Court rejected the Restatement (Second) of Agency §202(2) employment test and emphatically held that "any employment-status dispute arising under the WPL . . . should be resolved by utilizing the 'ABC' test set forth in N.J.S.A. 43:21-19(i)(A)-(C)."  Id. at 312, 463; *see also Echavarria v. Williams Sonoma, Inc. et al.*, 2016 WL 1047225, at *6 (D.N.J. March 16, 2016) (confirming that ABC test governs employment status determination under New Jersey law per *Hargrove*).

### V.      THERE IS NO RISK OF FEDERAL PREEMPTION UNDER THE FEDERAL ADMINISTRATION AUTHORIZATION ACT OF 1994.

Although the proposed settlement arguably provides adequate deference to *Hargrove, supra,* it tempers that certainty of success with an unreasonable risk factor based on a potential preemption defense.  FXG's potential preemption defense, however, has been definitively dealt with under New Jersey law and is deserving of a nominal risk factor, if any.

In *Echavarria v. Williams Sonoma, Inc. et al.*, the New Jersey District Court was presented with the question of whether employment claims, such as those here, were subject to Federal preemption under the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA"), 49 U.S.C. §14501(c)(1).  The Court considered the treatment of the FAAAA preemption arguments by various Circuits, including the Seventh Circuit's opinion in *Costello v. Beavex, Inc.*, 810 F.3d 1045 (7th Cir. 2016), and held that the FAAA does not preempt employment claims such as those brought by the New Jersey Class:

[W]hile the Third Circuit has not addressed this issue directly, it has provided some helpful language about ADA/FAAA preemption generally. In an ADA case, the Third Circuit highlighted "the well-established principle that 'courts should not lightly infer preemption.'" *Gary v. Air Grp., Inc.*, 397 F.3d 183, 190 (3d Cir. 2005) … Moreover, this principle "is particularly apt in the employment law context which falls 'squarely within the traditional police powers of the states, and as such should not be disturbed lightly.'" *Id.* (citation omitted). The Third Circuit suggested that "garden variety employment claim[s]" in particular are not preempted by the ADA. *Id.* at 189.

This Court will not infer preemption in this traditional area of state power when MXD has failed to argue that the NJWHL will have the kind of "significant impact" on its prices, routes, or services that Congress sought to prevent under the FAAAA. *Rowe*, 552 U.S. at 371.

*Echavarria,* 2016 WL 1047225, at *6 (D.N.J. March 16, 2016).

In agreeing with the Seventh Circuit's decision in *Beavex*, the New Jersey District Court noted with approval that the Seventh Circuit highlighted that labor laws, which regulate the motor carrier as an employer, are often too remote to warrant FAAAA preemption. *Id.* at *8. The Court also focused on the Seventh Circuit articulation of a line between laws affecting a carrier's contracts with its *consumers*, and laws affecting a carrier's contracts with its *employees*. *Id.* The United States Supreme Court has only found FAAAA preemption where state laws affected a carrier's contracts with its *consumers. See, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 387–88 (1992); *Beavex,* 810 F.3d at 1054 ("Laws that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to the carrier's relationship *with its consumers* to warrant preemption.").

Thus, the law is well-settled in New Jersey that the FAAAA will not act to preempt the New Jersey Class' claims.   In light of the New Jersey District Court's clear decision in

*Echavarria v. Williams Sonoma, supra,* it is evident that the risk of Federal preemption was grossly over-weighted in the proposed settlement.

## VI.   DISCOVERY IS REQUIRED TO FULLY ASSESS THE INADEQUACIES OF THE SETTLEMENT

The New Jersey Class Representatives are entitled to limited discovery in order to fully determine why no value was assigned to the NJCFA claims and why the Wage and Hour claims were discounted.   To answer these questions, the New Jersey Class Representatives need, amongst other things, copies of the mediation briefs exchanged by the parties and the worksheets and calculations used by Co-Lead Counsel at the mediation session to establish a value for the New Jersey Class, and the mediation briefs, worksheets, and calculations in the North Carolina Class.   The New Jersey Class Representatives also need discovery regarding how the full settlement value for the MDL was determined.

The New Jersey Class Representatives have attempted to obtain this information from their Counsel who have a legal obligation to provide a client with a copy of their file.   However, New Jersey Class Representatives have been rebuffed and have not been provided with any useful settlement back-up whatsoever.

The Seventh Circuit case of *Mars Steel Corporation v. Continental Illinois National Bank,* 834 F.2d 677, 684 (7th Cir.1987) governs whether a moving party may obtain discovery of settlement negotiations. In that case, the Seventh Circuit held that discovery is proper where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive. *Mars,* 834 F.2d at 684. In *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1116 (7th Cir. 1979) the Seventh Circuit found that "the conduct of the negotiations was relevant to the fairness of the settlement and that the trial court's refusal to permit discovery or examination of the negotiations constituted an abuse of

discretion."   Moreover, *The Manual for Complex Litigation* provides that inquiry into the conduct of settlement negotiations is pertinent to the court's examination of the settlement. *Manual for Complex Litigation* s 1.46 at 53-54.

Here, while the New Jersey Class Representatives have set forth why the settlement is not reasonable and should not be approved, the New Jersey Class Representatives are doing so without all of the information.   The New Jersey Class Representatives have, at a minimum, established that the NJCFA claims should have been given value and that the risk associated with the wage and hour claims was overstated.   To determine exactly how much the New Jersey Class has been shortchanged, discovery of the above documents and information is necessary.

## CONCLUSION

For the foregoing reasons, we respectfully request that the proposed New Jersey Class settlement should not be granted final approval.

**DATED:** November 14, 2016                    **DiSABATO & BOUCKENOOGHE LLC**

By:  */s/ David J. DiSabato*
       David J. DiSabato, Esq.
       Lisa R. Bouckenooghe, Esq.
       4 Hilltop Road
       Mendham, New Jersey 07945
       Tel.: 973-813-2525
       Fax: 973-900-8445
       ddisabato@disabatolaw.com
       lbouckenooghe@disabatolaw.com

**NAGEL RICE, LLP**

By:  */s/ Greg M. Kohn*
       Greg M. Kohn, Esq.
       103 Eisenhower Parkway
       Roseland, New Jersey 07068
       973-618-0400
       gkohn@nagelrice.com
       (*pro hac vice* admission pending)
       *Attorneys for the Objectors /*
       *New Jersey Class Representatives*